## AIN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MICHELLE D.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 21-cv-04921** |
| **v.** | ) | |
| | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **KILOLO KIJAKAZI,[1]** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Michelle D. ("Claimant") moves to reverse or remand the final decision of the Commissioner of Social Security ("Commissioner") denying Claimant's application for Disability Insurance Benefits ("DIBs"). (Dckt. #11). The Commissioner responds, (Dckt. #12), asking this Court to uphold the decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c) and this Court has jurisdiction pursuant to 42 U.S.C. §405(g). For the reasons that follow, Claimant's motion to reverse the decision of the Commissioner is denied and the Commissioner's motion to uphold the decision to deny benefits is granted.

## I.      BACKGROUND

### A.      Procedural History.

Claimant, who was forty-seven years old at the onset of her disability, is a former veterinary clinic manager who seeks DIBs due to limitations stemming from rheumatoid arthritis, bipolar II disorder, and recurrent major depressive disorder. (Administrative Record

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

("R.") 20). Claimant's earnings records show that she acquired sufficient quarters of coverage to meet the insured status requirements of the Social Security Act through December 31, 2023. (R. 19).

On November 27, 2018, Claimant filed an application for DIBs, alleging disability beginning November 15, 2018. (R. 17). Claimant's application was denied initially and upon reconsideration. Claimant filed a timely request for a hearing, which occurred on November 20, 2020, before an Administrative Law Judge ("ALJ"). (R. 38-76). On January 8, 2021, the ALJ issued a written decision denying Claimant's application for benefits. (R. 14-36). Claimant filed a timely request for review with the Appeals Council, which denied her request, leaving the ALJ's decision as the Commissioner's final decision. This action followed.

### B.     The Social Security Administration Standard to Recover Benefits.

In order to qualify for disability benefits, a claimant must demonstrate that she is disabled. An individual does so by showing that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically

2

acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical

or mental impairment "must be established by objective medical evidence from an acceptable

medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118 at *2 (N.D.Ind.

Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental

impairments, the ALJ then determines whether the impairment(s) standing alone, or in

combination, are severe and meet the twelve-month duration requirement noted above. 20

C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at

step two to a list of impairments identified in the regulations ("the listings"). The specific

criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20

C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a

listing, she is considered to be disabled, and the analysis concludes. If the listing is not met, the

analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional

capacity ("RFC"), which defines her exertional and non-exertional capacity to work despite the

limitations imposed by her impairments. The SSA then determines at step four whether the

claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If

the claimant can do so, she is not disabled. *Id*. If the claimant cannot undertake her past work,

the SSA proceeds to step five to determine whether a substantial number of jobs exist that the

claimant can perform in light of her RFC, age, education, and work experience. An individual is

not disabled if she can do work that is available under this standard. 20 C.F.R.

§404.1520(a)(4)(v).

### C. The ALJ's Decision.

The ALJ applied the five-step inquiry set out by the Act in reaching her decision to deny Claimant's benefits request. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity during the period between her alleged onset date of November 15, 2018, and the date of her decision, January 13, 2021. (R. 20). At step two, the ALJ determined that Claimant suffered from the severe impairments of rheumatoid arthritis ("RA"), bipolar II disorder,[2] and recurrent major depressive disorder ("MDD"). (*Id*.).

At step three, the ALJ concluded that none of Claimant's impairments or combination of impairments met or medically equaled one of the Commissioner's listed impairments, including listings 14.09 (inflammatory arthritis) and 12.04 (depressive, bipolar and related disorders). (*Id*.). The ALJ also found that Claimant's impairments caused a moderate limitation in her ability to understand, remember, or apply information, as well as concentrate, persist, or maintain pace; a mild limitation in her ability to interact with others; and no limitation in her ability to adapt or manage herself. (R. 20-21).

Before turning to step four, the ALJ made the following RFC assessment:

[C]laimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §404.1567(b) except frequent handling and fingering, frequent overhead reaching, no climbing [ladders, ropes, and scaffolding], and engaging in the remaining postural activity on a frequent basis in environments with no assembly line production dictated by an external source, no danger[ous] machinery, no extreme temperatures and no unprotected elevations. In addition, the claimant can understand, carry out and remember simple instructions that require little or no judgment and a short time to learn in environments with occasional interaction with the public, co-workers and supervisors.

---

[2] Bipolar II is one of three types of bipolar disorder that is "defined by a pattern of depressive episodes and hypomanic episodes. The hypomanic episodes are less severe than the manic episodes in bipolar I disorder." *Bipolar Disorder*, National Institute of Mental Health, https://perma.cc/48QA-K85V (last visited June 7, 2023).

4

(R. 22). At step four, the ALJ found Claimant unable to perform past relevant work as a veterinary clinic manager. (R. 28). At step five, and in consideration of Claimant's RFC, age, education, and work experience, the ALJ determined that jobs existed in significant numbers in the national economy that Claimant could perform. (R. 29). The ALJ, in reliance on the testimony of a vocational expert ("VE"), found that Claimant could perform positions such as a cashier (approximately 1.5 million nationally-available jobs), office helper (50,000 jobs), and information clerk (680,000 jobs). (*Id*.). As such, the ALJ found Claimant was not disabled between November 15, 2018, and January 13, 2021. (*Id*.).

## II.    STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th

Cir. 2008). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

## III.    ANALYSIS

Claimant raises three arguments in support of remand: (1) the ALJ failed to support her decision to discount the opinions of her treating psychiatrist and two consultative examiners; (2) the ALJ improperly discredited the statements of her and her husband regarding her limitations; and (3) the ALJ failed to accommodate all limitations arising out of Claimant's combined impairments in the mental RFC assessment and hypothetical questions to the VE. For the reasons laid out below, the Court disagrees with each assertion.

### A.    The ALJ's assessment of the medical opinion evidence is supported by substantial evidence.

As of March 27, 2017, ALJs are no longer mandated to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §404.1520c(a); *see also Mesha C. v. Kijakazi*, No. 21 C 6451, 2023 WL 2663569, at *2 (N.D.Ill. Mar. 28, 2023). Instead, ALJs will consider the persuasiveness of such opinions based on their "supportability, consistency, the relationship of the treater with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Bethany G. v. Kijakazi*, No. 20-cv-50483, 2023 WL 2683501,

at *3 (N.D.Ill. Mar. 29, 2023) (citing 20 C.F.R. §404.1520c(a), (c)). Consistency and supportability are the most important factors and courts "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, [but courts] do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation.'" *Bethany G.*, 2023 WL 2683501, at *3, *quoting Ray v. Saul*, 861 Fed.Appx. 102, 105 (7th Cir. 2021) (citations omitted); 20 C.F.R. §404.1520c(b)(2).

Claimant argues that the ALJ performed a "significant degree of cherry picking," particularly related to her assessment of the two psychological consultative examinations of Drs. Higdon and King, and her decision to discount the mental RFC submissions of her treating physician, Dr. Barnett, "without explanation." (Dckt. #11 at 8-11). According to Claimant, the ALJ's findings and explanations in this regard were unsupported and inconsistent with a finding of no disability. (*Id*. at 11). The Court disagrees.

### 1. Psychological consultative examiners Drs. Higdon and King.

Claimant asserts that the ALJ misleadingly characterized the opinion evidence offered by psychological consultative examiners Laura Higdon, Ph.D., and Jason King, Psy.D., during her analysis. (Dckt. #11 at 8-9). Before turning to the specifics of Claimant's criticisms, the Court will first present how the ALJ assessed the two consultants in her decision. With respect to Dr. Higdon, the ALJ stated:

> In January of 2019, the claimant underwent a psychological consultative examination. The claimant was noted to have a normal gait and was cooperative and pleasant. At the time, the claimant rated her rheumatoid arthritis pain at a four to six out of ten. She reported that she will sleep all day and that her energy and motivation are reduced. Upon examination, the claimant was noted to have some psychomotor slowing; however, her eye contact was adequate, her speech was clear and her thought process was intact. Her affect and mood were noted to be sad, depressed and anxious; however, she was noted to be insightful, fully orientated and her memory was intact. The consultant diagnosed the claimant with PTSD and major depressive disorder.

(R. 24 (citing R. 436-40)).  With respect to Dr. King, the ALJ stated:

> In September [2020], the claimant underwent a second psychological consultative examination.  The claimant was noted to be cooperative, easily engaged and presented with a good attitude.  Her behavior was appropriate, her impulse control was fair and she was fully oriented; however, her mood was depressed and she reported intermittent suicidal ideations.  Her thought process was logical and coherent and her mood was reportedly labile.  The consultant diagnosed the claimant with bipolar II disorder and PTSD.

(R. 25 (citing R. 590-94)).  Finally, the ALJ noted that:

> [T]he psychological consultative examiners did not advance an opinion as to the claimant's functional ability.  However, both examiners opined that the claimant is capable of managing benefits should they be awarded.  The undersigned finds these opinions to be persuasive as they are consistent with the claimant's reported activities of daily living; most notably, the claimant reported that she is able to manage a checking and savings account.

(R. 27 (internal citations omitted)).

Claimant criticizes the ALJ for failing to take note of Dr. Higdon's observations that she would benefit from continued psychiatric care and psychotherapy and that her daily functioning was "extremely impaired" by her depression and anxiety.  However, these observations are not "medical opinions" that the ALJ needed to account for because they do not address Claimant's ability to perform physical, mental, or other demands of work activities.  *See* 20 C.F.R. §404.513(a)(2) (defining "medical opinion" evidence).  By contrast, the examiners' opinion that Claimant had the ability to manage her own funds, (R. 27), relates to an activity of daily living that the ALJ *could* appropriately consider when assessing the RFC.  *See, e.g.*, *Cromwell v. Kijakazi*, ___ 4th ___, 2023 WL 4377086, at *4 (7th Cir. July 7, 2023).  Claimant also asserts that the ALJ erred by ignoring the examiners' documentation of her subjective statements regarding her condition.  (Dckt. #11 at 8-9).  However, Claimant's subjective statements about her symptoms "shall not alone be conclusive evidence of disability," (*see* 42 U.S.C. §423(d)(5)(A)), nor do they reflect the medical opinions of the examiners.

8

Finally, Claimant notes that the ALJ did not comment on Dr. King's opinion that she had "some difficulties with sustained mental effort, concentration, and working memory." (R. 593). While this is true, the ALJ did find that Claimant had a moderate limitation in her ability to remember, concentrate, and maintain pace, (R.21), and she incorporated non-exertional limitations into the RFC to accommodate these impairments. (*See* R. 22 (finding that Claimant should work in "environments with no assembly line production dictated by an external source" and that "[C]laimant can understand, carry out and remember simple instructions that require little or no judgment and a short time to learn in environments with occasional interaction with the public, co-workers and supervisors.")). Claimant does not identify any additional limitations supported by the medical record that the ALJ should have included in the RFC. Consequently, the ALJ's failure to comment on this aspect of Dr. King's opinion caused no harm.

## 2. Treating Psychologist Dr. Barnett.

Claimant likewise contends that the ALJ erred by discounting Dr. Lynn Barnett's two opinions regarding her mental condition. (Dckt. #11 at 9-10). For the reasons stated below, the Court finds that the ALJ's assessment of Dr. Barnett's opinions is supported by substantial evidence.

First, after seeing Claimant monthly for four months, Dr. Barnett submitted a mental RFC statement on Claimant's behalf on January 22, 2020.[3] (R. 693-66). Dr. Barnett diagnosed Claimant with bipolar II disorder and major depressive disorder and indicated that her prognosis was "fair." (R. 693). However, Dr. Barnett wrote that she was "unable to assess" in response to a question on the form that asked her to rate Claimant's "mental abilities to function

---

[3] The "mental RFC statement" refers to a twenty-question form filled out by Dr. Barnett on Claimant's behalf. While there is one open-ended question for additional comment and narrative to end the form, most of the form's questions allow for only short answers or include check-boxes with pre-filled answers.

independently, appropriately, effectively and on a sustained, consistent, useful and routine basis, without direct supervision or undue interruptions or distractions – 8 hours per day, 5 days per week – in a regular, competitive work settling for more than six consecutive months." (*Id.*). Dr. Barnett left most of the remainder of the form blank though she did note that Claimant did not have reduced intellectual functioning. (R. 696). The ALJ found that this opinion was unpersuasive based on Dr. Barnett's own acknowledgment that she was unable to assess Claimant's ability to function. (R. 26). This was a perfectly reasonable assessment and even Claimant does not appear to disagree. (Dckt. #11 at 9 (noting that "the ALJ summarily rejected her first opinion, even though there was, in truth, not much to assess as Dr. Barnett acknowledged she was unable, at that time, to assess functional limitations.")).

Dr. Barnett rendered her second opinion on December 14, 2020, in response to the ALJ's request at Claimant's hearing, when she prepared a letter summarizing Claimant's mental health treatment and submitted a second check-box mental RFC statement. (R. 974-79). Dr. Barnett diagnosed Claimant with medication-resistant depression because monthly monitoring and tweaking of Claimant's prescriptions had been ineffective. (R. 974-75). Dr. Barnett also indicated on the check-box form that Claimant's mental impairments would preclude her performance of fifteen percent or more in the following categories of a typical workday: (1) perform activities within a schedule, maintain regular attendance, and be punctual; (2) sustain an ordinary routine without special supervision; (3) complete a normal workday and workweek without interruption from her depression symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the public; (5) accept instructions and respond appropriately to criticism from supervisors; (6) be congenial with coworkers; and (7) adapt to changes in her work setting. (R. 976-78). Dr. Barnett believed

Claimant would be absent six or more days per month and off task more than thirty percent of an average workday as a result of her physical and mental impairments, and that she would therefore be unable to obtain and retain work in a competitive environment. (R. 978-79).

The ALJ found Dr. Barnett's second opinion to be "less persuasive" because it was "internally inconsistent" and "otherwise unsupported by the record as a whole." (R. 26).

In particular, the ALJ noted that the dire finding in Dr. Barnett's second mental RFC opinion regarding Claimant's alleged inability to "sustain any remunerative work on a regular basis" was "incongruent" with her observation that Claimant was "alert, cooperative, insightful and pleasant with average intelligence" and with normal "cognition and judgment." (R. 26). Dr. Barnett's mental RFC opinion was also inconsistent with the findings of Drs. Higdon and King, which documented that Claimant had normal cognition, judgment, and perception, clear speech, logical thought processes, and average estimated intelligence notwithstanding her depression and PTSD. (R. 24-25 (citing various medical records from Drs. Higdon and King)). The inconsistencies between Dr. Barnett's opinion and her own treatment notes and Drs. Higdon and King provided a legitimate reason to discount Dr. Barnett's opinion. *See, e.g., Baptist v. Kijakazi*, ___ F.4th ___, 2023 WL 4540546, at *5-6 (7th Cir. July 14, 2023) (a treating physician's opinion may be discounted where, *inter alia*, it is internally inconsistent or is inconsistent with other objective evidence in the record, such as physician treatment notes).

The ALJ also took note of the fact that Dr. Barnett's December 2020 opinion was expressed on a check-box form without providing any supporting basis. (R. 17, 26). The Seventh Circuit has noted that checklist observations are "perhaps less useful to an ALJ than a doctor's narrative RFC assessment," and it was permissible to discount Dr. Barnett's opinion for this reason. *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015); *Urbanek v. Saul*, 796 Fed.Appx.

11

910, 915 (7th Cir. 2019) (checklist observations "do not outweigh narrative opinions."); *Kinnari A. v. Saul*, No. 19 C 760, 2020 WL 1863291, at *8 (N.D.Ill. Apr. 14, 2020) ("The Seventh Circuit has characterized such check-box form[s] with no supporting narrative as 'weak evidence' when the findings are inconsistent with the medical record.") (citing cases).

In addition, Dr. Barnett's mental RFC submission was inconsistent with the opinions of the state agency psychological consultants (Russell Taylor, Ph.D., and Thomas Low, Ph.D.) at the initial and reconsideration levels, which the ALJ found to be persuasive. (R. 27). As the ALJ noted, "the consultants opined that the claimant can understand, remember and concentrate well enough to carry out multi-step tasks for a normal work period"; "[s]he can interact and communicate sufficiently for a work setting with reduced social/interpersonal demands"; and "[s]he would do best in a predictable, routine work setting where employment related social interactions are infrequent, brief and largely task-specific (vs collaborative)." (R. 27-28). The consultants' opinions aligned with the ALJ's finding that "the record as a whole does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all substantial gainful activity." (R. 28). As the Seventh Circuit has made clear, an ALJ can choose to discount the opinion of a treating physician where it is inconsistent with the opinions of the state agency consultants. *See, e.g.*, *Baptist*, 2023 WL 4540546, at *5 (7th Cir. July 14, 2023) (a treating physician's opinion may be discounted where it is inconsistent with a consulting physician's opinion); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (same).

Finally, the ALJ properly rejected Dr. Barnett's conclusions about Claimant's disability status and ability to work, (R. 26), because the questions of whether a claimant is "disabled" or "unable to work" are reserved to the Commissioner. 20 C.F.R. §404.1527(d)(1). As the Seventh Circuit has often reiterated, such opinions are "entitled to *no* weight, even coming from a treating

physician." *Spies v. Colvin*, 641 Fed.Appx. 628, 636 (7th Cir. 2016) (emphasis added); *Ray v. Saul*, 861 Fed.Appx. 102, 105-06 (7th Cir. 2021); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016).

At base, Claimant asks this Court to reweigh the evidence and perform its own assessment of the various opinions presented. The Court declines to do so given that the ALJ supported her discussion of the various opinions with substantial evidence. *See Elder*, 529 F.3d at 413; *Yurt v. Colvin*, 758 F.3d 850, 856-57 (7th Cir. 2014).

### B. The ALJ's assessment of Claimant's and her husband's subjective statements regarding her symptoms is supported by substantial evidence.

Next, Claimant asserts that the ALJ improperly undermined Claimant's and her husband Lyle's subjective statements regarding her symptoms when she "'cherry pick[ed]' pieces of evidence that support[ed] a conclusion of no disability while ignoring related evidence that undermines that conclusion." (Dckt. #11 at 11-12).

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-311 (7th Cir. 2012). To show that the ALJ's evaluation is patently wrong, a claimant must demonstrate that the evaluation lacks "any explanation or support." *Elder*, 529 F.3d at 413-14; *Horr v. Berryhill*, 743 Fed.Appx. 16, 20 (7th Cir. 2018). SSR 16-3p provides guidance to ALJs for assessing a claimant's symptoms via a two-step process whereby the ALJ first determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022). Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects" of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities. SSR 16-3p, 2017 WL 5180304, at *3; *Wilder*, 22

13

F.4th at 654.  In making this evaluation, the ALJ should consider the entire case record, along with (1) the claimant's daily activities; (2) location, duration, frequency, and intensity of pain or symptoms; (3) precipitating and aggravating factors; (4) type, dosage, and side effects of medication; (5) treatment other than medication; (6) any measures other than treatment an individual uses to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions.  SSR 16-3p, 2017 WL 5180304, at *7; 20 C.F.R. §416.929.

After comprehensively detailing Claimant's historic subjective reporting and hearing testimony regarding her symptoms, (R. 22-23),[4] the ALJ found that Claimant's medically determined impairments could reasonably be expected to cause some of her alleged symptoms and that she did experience difficulty in performing some tasks.  (R. 23, 28).  Nonetheless, the ALJ further found that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (R. 23).

In particular, the ALJ found that: (1) imaging studies of Claimant's hands were unremarkable and that she retains normal strength and sensation, with no noted muscle spasms or reflex changes; (2) Claimant's RA is noted to be controlled on the current medications; (3) mental health records generally show good response to treatment and medications; (4) Claimant was observed by mental health professionals to be alert, cooperative, insightful, pleasant with average intelligence, and with her cognition and judgment intact; and (5) Claimant – per her own reports and the reports of her husband – is able to shop for groceries multiple times per week,

---

[4] The ALJ's reporting of the totality of Claimant's subjective symptom statements renders baseless Claimant's suggestion that the ALJ "cherry picked" her statements to highlight only the evidence that supported a conclusion of non-disability.  (Dckt. #11 at 12).

attend church, drive a car, and perform household chores. (R. 22, 28 (citing to Claimant's reports of her activities of daily living)). The ALJ's reliance on these reasons to discount Claimant's subjective statements is supported by regulations and precedent. *See* 20 C.F.R. §404.1529(c)(3); SSR 16-3p, 2017 WL 518004, at *7; *Prill v. Kijakazi*, 23 F.4th 738, 738 (7th Cir. 2022); *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009).

Claimant, who ignores all but one of the reasons the ALJ cites to discount her subjective statements, asserts – in reliance on Dr. Barnett's opinion – that she did not have a good response to treatment and that her resistant symptoms will only worsen with peri-menopause. (Dckt. #11 at 12). As explained above in Section III(A)(2), however, the ALJ's decision to discount Dr. Barnett's opinions is supported by substantial evidence. In any event, even if the ALJ erred by finding that Claimant had a good response to treatment and medication for her mental health, the ALJ's decision to discount Claimant's subjective statements was not patently wrong because the ALJ provided several other reasons that were adequately supported by the record for doing so. *See, e.g.*, *Schrank v. Saul*, 843 Fed.Appx. 786, 789 (7th Cir. 2021) ("Even if the ALJ's other reason for discounting Schrank's testimony . . . was not substantiated by the record, we would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding."); *see also Matthews v. Saul*, 833 Fed.Appx. 432, 437 (7th Cir. 2020) (finding that the ALJ's partially adverse credibility finding was not patently wrong even though the ALJ's "reasoning was not airtight.").

Claimant also asserts that the ALJ impermissibly discounted her husband Lyle's third-party statement. The Court disagrees. To begin, the ALJ actually found Lyle's statements to be "partially persuasive" and she expressly credited his statement that Claimant was able to perform

a number of activities of daily living (namely, that Claimant "was able to shop for groceries multiple times per week, attend church, drive a car and perform household chores"). (R. 26). The ALJ discounted other portions of Lyle's statements – which mirrored those of Claimant[5] – after pointing out inconsistencies between his statements and the record as a whole. (R. 26). In particular, the ALJ cited to medical records which undercut Lyle's statement that Claimant struggled with physical movement by documenting that she had a full range of motion and strength in all extremities without synovitis, tenderness, or swelling. (*Id.*). The ALJ cited to other medical records (detailed above in Section III(A)) which report that clinicians observed Claimant to be alert, cooperative, insightful, and pleasant with normal cognition and average intelligence. (*Id.*). Finally, Lyle's own acknowledgement of Claimant's ability to engage in various activities of daily living undercut his statements regarding the severity of Claimant's limitations. (*Id.*).

In sum: the ALJ's assessment of Lyle's statements is not patently wrong and therefore provides no basis for remand where, as here, the ALJ rested her assessment on "specific reasons that are supported by the record." *Elder*, 529 F.3d at 413-14; *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").[6]

---

[5] For example, the ALJ noted that both Claimant and Lyle reported that Claimant had difficulty lifting, squatting, bending, walking, kneeling and climbing stairs, and that she had difficulty with her memory, understanding, following instructions, and getting along with others. (*Compare* R. 22 *with* R. 26).

[6] The Court acknowledges – as the parties agree – that the ALJ erred by stating that Lyle's statements should have been considered as a non-medical source under 20 C.F.R. §404.1527(f), rather than under the proper provision (20 C.F.R. §404.1513(a)(4)). Claimant has not asserted that this error created any harm, and the Court agrees with the Commissioner that this error was harmless given that the ALJ's analysis and approach would have been the same under the correct regulatory provision.

### C.  The RFC and hypothetical questions are supported by substantial evidence.

Claimant next argues that "the ALJ's RFC assessment and hypotheticals to the VE fall far short of accounting for [Claimant's] *true* functional deficits" and are  therefore unsupported by substantial evidence.  (Dckt. #11 at 15) (emphasis added).  Claimant also alleges that the ALJ "failed to factor in the effects of [Claimant's] rheumatoid arthritis symptoms, as well as symptoms from other impairments on [Claimant's] ability to sustain work related functions full time." (*Id*.).  The Court disagrees and  finds that the ALJ's formulation of Claimant's RFC and the hypothetical questions to the VE are supported by substantial evidence.

### 1.     The RFC and hypothetical questions adequately accounted for Claimant's non-exertional limitations.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759, F3d 811, 817 (7th Cir. 2014); *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (The RFC "is the most an individual can work despite his or her limitations or restrictions.").  The RFC must be assessed based on all the relevant evidence in the record and the task of assessing a claimant's RFC is reserved to the Commissioner.  20 C.F.R. §404.1545(a)(1); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995).  "When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted).  Nonetheless, "an ALJ need not use any 'magic words' in an RFC assessment . . . so long as the assessment 'incorporate[s] all of the claimant's limitations that are supported by the medical record.'" *Weber v. Kijakazi*, No. 20-

2990, 2021 WL 3671235, at *5 (7th Cir. Aug. 19, 2021), *quoting Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

Here, the ALJ relied primarily on the opinions of the state agency psychological consultants to determine Claimant's non-exertional limitations and to formulate her RFC. (R. 27-28). This was permissible. *See, e.g.*, *Capman v. Colvin*, 617 Fed.Appx. 575, 577-79 (7th Cir. 2015) (noting the ALJ's reliance on the state agency psychological consultant when assessing claimant's RFC); *Varga v. Colvin*, 794 F.3d 809, 811-14 (7th Cir. 2015) (same). In pertinent part, the ALJ determined that Claimant has the RFC to perform light work as defined by 20 C.F.R. §404.1567(b)[7] except that she should work in "environments with no assembly line production dictated by an external source" with the limitation that she "can understand, carry out and remember simple instructions that require little or no judgment and a short time to learn in environments with occasional interaction with the public, co-workers and supervisors." (R. 22). This RFC incorporated limitations that were over and above those specified by the state agency consultants. (R. 27-28).

The Court finds that the RFC adequately addressed Claimant's moderate limitations in both understanding, remembering or applying information and in concentrating, persisting or maintaining pace, and her mild limitation in interacting with others. *See, e.g.*, *Cromwell*, 2023 WL 4377086, at *2, 4 (affirming an RFC assessment with comparable limitations for claimant who had moderate limitations in understanding, remembering, or applying information, interacting with others, and in her ability to concentrate, persist, and maintain pace); *Morrison v. Saul*, 806 Fed.Appx. 469, 474 (7th Cir. 2020) ("limiting Morrison to jobs involving 'simple and detailed, one-to-five step instructions only' adequately accounted for the only deficits in

---

[7] "Light work", within the meaning of the operative regulation, contemplates an eight-hour workday. *See, e.g.*, *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022).

18

concentration, persistence, and pace that the ALJ found supported by the record"); *Pytlewski v. Saul*, 791 Fed.Appx. 611, 616 (7th Cir. 2019) (the ALJ "tailored Pytlewski's workplace setting to accommodate for Pytlweski's anxiety, depression, and anger issues by limiting his interaction with people and restricting him from making high-stakes decisions."); *Dudley v. Berryhill*, 773 Fed.Appx. 838, 842 (7th Cir. 2019) ("the ALJ here specifically limited Dudley to 'work requiring the exercise of only simple judgment,' – a limitation that specifically accounts for Dudley's concentration difficulties."); *Nina Joyce H. v. Saul*, No. 18 C 4913, 2020 WL 212771, at *9-10 (N.D.Ill. Jan. 14, 2020) (limiting claimant to "average production pace" was sufficient to account for her moderate limitation in maintaining pace); *see also Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (noting that "any pace-based goals must be *reasonable* as a way of signaling that the employer could not set the bar beyond the person's functional reach.") (emphasis in original).

Although Claimant asserts that the ALJ did not incorporate into the RFC all of her non-exertional limitations that are supported by the medical record, (Dckt. #11 at 12-15), she failed to meet her burden of identifying any such additional limitations that the ALJ did not include. *See Shaun R. v. Saul*, No. 18 C 4036, 2019 WL 6834664, at *5 (N.D.Ill. Dec. 16, 2019) ("If there are assessments showing plaintiff's memory is more limited than the ALJ found, it was up to the plaintiff to point those out to the court. . . . That has not occurred.") (citations omitted). Instead, Claimant cites to Seventh Circuit decisions where the court found that the ALJ failed to incorporate a claimant's limitations into the RFC or the hypothetical questions posed to the VE.[8]

---

[8] *See, e.g.*, *Mandrell v. Kijakazi*, 25 F.4th 514, 516-518 (7th Cir. 2022) (holding that the ALJ's RFC failed to adequately capture what claimant could, and could not, do in light of her severe PTSD and other psychological conditions, including a failure to account for the triggering effect that being around men had on claimant – who had been raped by a fellow service member while serving in the United States Coast Guard); *Crump*, 932 F.3d at 571 ("Merely limiting Crump to simple, routine, and repetitive tasks with few workplace changes was not enough" to address her moderate limitations with concentration,

Where, as here, a claimant has failed to identify any additional non-exertional limitations supported by the medical record that the ALJ should have included in the RFC, any arguable error created by the ALJ's formulation of the RFC is harmless. *See, e.g.*, *Kuykendoll v. Saul*, 801 Fed.Appx. 433, 438 (7th Cir. 2020) (remand unwarranted where the claimant posits no relevant mental limitations the ALJ should have included in the RFC); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (any mental RFC assessment flaw was harmless because it was "unclear what kinds of work restrictions might address [claimant's] limitations in concentration, persistence, or pace because he hypothesizes none" and "the medical record does not support any."); *Saunders v. Saul*, 777 Fed.Appx. 821, 825 (7th Cir. 2019) (finding no error with RFC where claimant suggested no "better way to capture the idea behind limitations in concentration, persistence, and pace."); *Dallas E.H. v. Kijakazi*, No. 20 C 2717, 2021 WL 4635802, at *4 (N.D.Ill. Oct. 7, 2021) ("[T]he Seventh Circuit has held that even if an ALJ's RFC assessment of CCP restrictions is somehow flawed, any error is harmless where the claimant fails to identify additional limitations supported by the record that the ALJ should have included in the RFC.") (citing cases).

Claimant's criticisms of the ALJ's hypothetical questions to the VE are similarly meritless. "As a matter of form, the ALJ need not put the questions to the VE in specific terms – there is no magic word requirement" so long as "the VE is apprised fully of the claimant's limitations so that the VE can exclude those jobs that the claimant would be unable to perform. *Crump*, 932 F.3d at 570 (internal quotation marks omitted); *Urbanek v. Saul*, 796 Fed.Appx. 910, 914 (7th Cir. 2019) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010))

---

persistence, and pace); *Moreno v. Berryhill*, 882 F.3d 722, 729-30 (7th Cir. 2018) (finding that a hypothetical question which limited claimant to routine work with simple workplace judgments and no more than occasional changes in work setting failed to account for claimant's problems with becoming distracted, "spacing out," and experiencing difficulty concentrating).

(hypothetical question need not include terms "concentration, persistence or pace" to be sufficient). Here, the ALJ's hypothetical questions to the VE incorporated all elements of the RFC, (R. 71-74), and, as such, they were sufficient. *O'Connor-Spinner*, 627 F.3d at 619-20; *Urbanek*, 796 Fed.Appx. at 914. Furthermore, as with the RFC, Claimant fails to identify any additional limitations that are supported by the medical record that the ALJ failed to incorporate into the hypothetical questions. Indeed, after the ALJ asked the hypothetical questions at the hearing, Claimant's counsel had no follow-up questions. (R. 74).

### 2. The RFC adequately accounted for Claimant's rheumatoid arthritis.

Claimant next asserts in a single conclusory sentence that the ALJ inadequately accounted for her RA in the RFC. (Dckt. #11 at 15). Such "[p]erfunctory and undeveloped arguments are waived." *Vang v. Saul*, 805 Fed.Appx. 398, 403 (7th Cir. 2020) (internal quotation marks omitted). In any event, Claimant's argument lacks merit.

As explained above in Section I(C), the ALJ here determined Claimant could perform light work, except that she could frequently handle, finger, reach overhead, cannot climb ladders, ropes, and scaffolding, and could engage in remaining postural activity on a frequent basis without exposure to assembly line production dictated by an external force, dangerous machinery, extreme temperatures, and unprotected elevations. (R. 22). The ALJ discussed – at length – inconsistencies between the record and Claimant's statements regarding her symptoms, including her sleep patterns, joint pain, and results of her May 2019 physical exam that showed normal strength but bilateral wrist swelling and synovitis that had cleared up by a supplemental exam in February of 2020. (R. 22-24). Furthermore, even though the internal medicine consultative examiner, Dr. Gondi, did not say whether Claimant's physical impairments limited her ability to perform work related activities, the ALJ included restrictions in handling, fingering,

overhead reaching, climbing, and remaining in the same posture for extended periods, which account for arthritic impairments.  (R. 22, 482).

In sum:  with respect to Claimant's RA, "'there are no [additional] evidence-based restrictions that the ALJ could include in a revised RFC on remand.'"  *Vang*, 805 Fed.Appx. at 402, *quoting Jozefyk*, 923 F.3d at 498; *Fanta v. Saul*, 848 Fed.Appx. 655, 659 (7th Cir. 2021) ("Fanta does not point to any objective evidence or medical opinions in the record that support stricter limitations.  She also does not say what stricter limitations she requires."); *Weaver*, 746 Fed.Appx. at 579 (no error where the claimant fails to identify any evidence of combined effects of impairments that would justify additional RFC limitations).[9]

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse or remand the Commissioner's decision, (Dckt. #11), is denied and the Commissioner's motion for summary judgment, (Dckt. #12), is granted.  The decision of the ALJ is affirmed.

**Date: July 26, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**

---

[9] Claimant's skeletal argument that the ALJ failed to account for her symptoms of lupus, (Dckt. #11 at 15), has been waived and is meritless in any event for the same reasons that her argument regarding her RA fails.